1811.

Lodge
vs
Boone

That statute contains two provisions—The first empow-
ers the payee to sue on the note, and makes it sufficient
evidence to support his action without proving the consi-
deration. The words of the statute are, "the money men-
tioned in such note shall be construed to be *by virtue there-
of* due and payable to the person to whom the same is
made payable." The second provision empowers the as-
signee to sue in his own name if the note is made payable
to A B, or order, or bearer. The insertion of those words
makes the note transferrable, by giving authority to the
payee to assign it. A note of hand being a chose in ac-
tion, is assignable only under the statute, and no notes
are within the statute for the purpose of assignment, but
such as are made payable to A B, or order, or bearer.

The words *or order*, or *bearer*, are of no import or sig-
nification as to a suit brought by the payee, because as to
him, the only thing essential was the enabling him to sue
on the note, and to make it evidence without further proof.

All the cases which have been cited are suits by the
payee, or the administrator or executor of the payee, against
the maker, in which the courts decided the notes were
within the statute—because as to him it was of no conse-
quence whether the note was assignable or not. The case
of *Burchell vs. Slocock*, 2 *Ld. Raym.* 1545, was a suit by
the administrator of the payee against the maker, and the
court decided the note was within the state, although not
made payable to order, or bearer, and very rightly, for
the reasons the court have suggested. The court know of
no case in which it has been determined that an assignee
can maintain a suit in his own name against the maker, on
a note in which those words are not inserted.

The court are of opinion, that the act of assembly of
November 1809, *ch.* 153, does not take in this case.

JUDGMENT AFFIRMED.

JUNE.

LODGE vs. BOONE.

L entered into an
injunction bond,
together with O,
as the sureties of
J, to stay proceed-
APPEAL from *Montgomery* County Court, from a judg-
ment of nonsuit in an action of *assumpsit* for money had
ings on a judgment recovered against J by B, which bond was signed and sealed by L, but his name
was afterwards erased, and the name of H substituted in its place: On the dissolution of the injunc-
tion, a warrant from a justice of the peace was obtained on the bond by B against L, and the justice
expressing his opinion that L was bound to pay B's claim on the bond, L paid the money, and after-
wards brought an action of *assumpsit* for money had and received, against B, to recover it back—
*Held*, that if L did sign and seal the bond, but that his name was erased therefrom before the delivery
thereof to the clerk of the court, and before the injunction was granted by the court, and that the
bond was approved, and the injunction was granted as the bond of J, H and O, then B had no right
to recover the before mentioned money of L, and that L was entitled to recover the money back.

1811.

Lodge
vs
Boone.

and received. *Non assumpsit* and limitations were plead-ed. At the trial the plaintiff, (now appellant,) offered in evidence, that the defendant, about eight or ten years ago, obtained a warrant against him the plaintiff; that they both appeared before a justice of the peace for *Montgomery* county, to whom the warrant was returned, and before whom a trial was then had between the plaintiff and defendant, upon which trial the defendant claimed of the plaintiff £18. This claim was made against the plaintiff, as security of a certain *John Ball*, in four bonds—The first in the name of, and executed by, *John Ball, Henry O'Neale,* (the plaintiff's name first inserted and afterwards stricken out, and *Henry O'Neale's* name inserted,) and *John O'Neale*, to *Isaiah Boone*, (the defendant,) dated the 12th of June 1797, reciting a judgment obtained by *Boone* against *Ball*, in *Montgomery* county court, in an action of debt, to be released on payment of £22 10 0, with interest from 1st Nov. 1792, and from which judgment *Ball* had prayed an appeal to the said court as a court of equity. The bond was conditioned to pay such sum as the said court should adjudge, &c. The witnesses to the bond were *William O'Neale* jun. *William Ray* jun. *Basil Beck-with*, and *Samuel Dyson*. The other bonds were execut-ed as the first, and for the same purpose, upon other judg-ments in other actions of debt, for sums of the same amount, with interest from different periods. They were execut-ed and witnessed by the same persons as the first bond. That upon the said trial, the magistrate declared that he considered the plaintiff liable to pay the defendant the a-mount of his claim on the bonds aforesaid, and upon the magistrate's expressing this opinion, the plaintiff paid the amount of the claim to the defendant. The plaintiff also offered in evidence, that in March 1806, in a conversation between himself and the defendant, he told the defendant that he ought not to have paid him the money, as he had found that he was not in the bonds, (alluding to the bonds above mentioned,) and that the defendant said, that if that was the case he must repay him the money. He also offer-ed in evidence, that the name *William Lodge*, signed to the said bonds, was erased and obliterated. It was ad-mitted that the name signed *William Lodge*, was in the proper handwriting of the plaintiff, and that the bonds had continued in the custody of the clerk ever since

the injunction was granted. The defendant then offered in evidence the four bonds referred to by the plaintiff, and proved by *William O'Neale,* junior, the subscribing witness to them, that he signed the same as a witness. He further gave in evidence the declaration of the plaintiff, made at different times, that he had signed the bonds as one of the obligors, and was liable to pay the defendant his proportion thereof; and further, that on the trial before the magistrate, in which the bonds were the foundation of the warrant, by the defendant against the plaintiff, long after the bonds were filed in court, and after the injunction was dissolved, the plaintiff did then acknowledge he was liable to pay to the defendant one half of the money arising on the costs secured by such bonds. He further offered evidence to prove, that the plaintiff was a connexion, by marriage, of *Ball's* wife, and acted as their agent in the suits between *Boone,* the defendant, and *Ball.* It was admitted that *Henry O'Neale* and *John O'Neale,* whose names appear to be signed to the bonds, were the brothers of *Ball's* wife, and the name *John O'Neale,* subscribed as an obligor to each of the four bonds, was in the handwriting of the said *William O'Neale,* the subscribing witness. The said *William O'Neale,* junior, also proved, that he did not recollect any thing about the execution of the bonds, and that he did not remember ever to have seen them until a year or eighteen months before he was sworn on this trial. The plaintiff then prayed the opinion of the court to the jury, that if the jury should find from the evidence that he the plaintiff did sign and seal the bonds aforesaid, but that his name was erased therefrom before the delivery thereof to the clerk of *Montgomery* county, and before the injunction was granted by the court, and that the bonds were approved, and the injunction granted by the court, as the bonds of *Ball* and the two *O'Neale's,* whose names were signed thereto, then the defendant had no right to recover of him the plaintiff the £18 aforesaid. But the Court, [*Chase,* Ch. J. and *Harwood,* A. J.] refused to give this direction, being of opinion, and so directing the jury, that if they find, on the whole of the evidence produced, that the plaintiff did sign, seal and deliver, the bonds, before the razures appearing on the bonds were made, and that the razures were not made by the obligee, or with his privity or consent, and that the bonds were not

in the custody and keeping of the obligee subsequent to the delivery thereof, that then the plaintiff cannot recover in this action. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before POLK, BUCHANAN, and NICHOLSON, J. by

*Taney*, for the Appellant(a); and by
*F. S. Key*, for the Appellee.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

(a) He referred to *O'Neale vs. Long,* 4 *Cranch,* 60; and *The State use Sim vs. Oden,* 2 *Harr. & Johns.* 108, (*note.*)

---

## WEST's Ex'x. vs. HALL.

APPEAL from a decree of the Court of Chancery. The cause, which is fully stated in the opinion delivered by this court, was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, and EARLE, J.

*Martin* and *Shaaff*, for the Appellant, contended, 1. That the bill ought not to have been taken *pro confesso.* 2. That the bill though taken *pro confesso,* affords of itself no ground for relief. On the *first point,* they referred to *Hawkins vs. Crook,* 2 P. *Wms.* 556. S. C. 2 *Eq. Ca. Ab.* 179; and *Davis vs. Davis,* 2 *Atk.* 21. On the *second point,* they cited 2 *Bac. Ab.* 405, 406. *House & Downs vs. Lord Petre,* 1 *Salk.* 311. *Morgan vs. Slade, et ux.* 2 *Harr. & Johns.* 88. *Mitf.* 40, (*note;*) and *Uxbridge vs. Staveland,* 1 *Ves.* 56.

W H by his will bequeathed a legacy to W H H, the complainant, and appointed S W and S W J his executors S W acted as such executor, and possessed himself of the personal estate. W H also by his will devised to S W J sundry tracts of land, which he made chargeable with W H H's legacy in case the personal estate should be deficient. S W never passed any account of the personal estate. W H H brought suit at law for his legacy, but not being able to prove assets, &c. his suit was dismissed. S W is dead, and by his will appointed H W his executrix, who acted as such, and possessed herself of the personal estate of S W more than sufficient to pay W H H's legacy. Bill in chancery by W H H. against H W executrix of S W, and S W J, charging the above facts, and that W H left a large *real* and *personal* estate more than sufficient to pay all his debts and legacies. The bill was taken *pro confesso* against H W, and she appealed to the Court of appeals. *Held,* that if the facts stated in the bill are not sufficient to entitle the complainant to the relief prayed, he cannot resort to the answer of the defendant, the proof taken in the cause, or any extraneous matter, to supply the defects in the charges contained in the bill. The bill did charge that the personal estate of W H was sufficient to pay the debts and legacies. It charged that the *real* and *personal* estate were sufficient. It charged that S W executor of W H, possessed himself of the personal estate of the deceased to a *considerable* amount, but it did not state that personal estate of W H came to the hands of the executor sufficient to pay the debts and legacies. It did not state that S W, the executor, wasted or misapplied the personal assets, so as to create a liability on his executrix to the amount so wasted, and to make his personal estate the fund out of which it was to be paid. It did not state that any part of the personal estate of W H came to the hands of H W executrix of S W. Every bill in chancery must state sufficient facts to entitle the complainant to the relief prayed, or relief under the general prayer. There were not facts charged in the bill sufficient to make H W, executrix of S W, liable to pay the complainant's legacy. The bill, to make her liable, ought to have charged the facts herein before stated. The bill being substantially defective, the chancellor, on application, would have granted leave to amend, and the defendant must have answered the amended bill. H W, as executrix of S W, was not the legal representative of W H.